**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROY H. JOHNSON, DDS, and WINDY HILL DENTISTRY, LLC, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE HARTFORD FINANCIAL SERVICES GROUP, INC., HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, HARTFORD INSURANCE COMPANY OF THE SOUTHEAST, HARTFORD UNDERWRITERS INSURANCE COMPANY, HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD INSURANCE COMPANY OF ILLINOIS, SENTINEL INSURANCE COMPANY, LTD., PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD, and JOHN DOE CORPORATIONS 1 – 100, <br><br> *Defendants*. | Case No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT – CLASS ACTION**

Plaintiffs Roy H. Johnson, DDS, ("Dr. Johnson") and Windy Hill Dentistry, LLC ("Windy Hill"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, file this Class Action Complaint against Defendants Hartford Fire Insurance Company, Twin City Fire Insurance Company, Hartford Accident And Indemnity Company, Hartford Casualty Insurance Company, Hartford Insurance Company Of The Southeast, Hartford Underwriters Insurance Company, Hartford Insurance Company Of The Midwest, Hartford Insurance Company Of Illinois (collectively "The Hartford" or "Defendants"), stating and alleging as follows:

## PRELIMINARY STATEMENT

This action implicates Defendants' long-standing history of collecting premiums from dental professionals to insure against the prospective loss of business income when business operations are suspended through no fault of their own. Now, amid the COVID-19 pandemic, when federal, state and local government "stay at home" orders and social distancing guidelines and recommendations have affected approximately 95% of the U.S. population to prohibit all non-essential and elective medical procedures, Defendants are rotely denying dental office business income loss claims, asserting that COVID-19 is not a covered loss . But as exemplified by the common and standard Spectrum® Business Owners policy issued to Dr. Roy

Johnson and Windy Hills Dentistry, LLC, and many others, the business income losses attributed to COVID-19 are expressly covered by the policy language and due to be paid.

## PARTIES, JURISDICTION & VENUE

1.   Plaintiff ROY H. JOHNSON, DDS, is a Georgia Citizen who resides in Cobb County, Georgia.

2.   Plaintiff WINDY HILL DENTISTRY, LLC, is a Georgia Limited Liability Corporation that maintains its principal business address in Cobb County, Georgia.

3.   Defendant THE HARTFORD FINANCIAL SERVICES GROUP, INC. is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via UPS statutory overnight delivery, to its CEO, Christopher J. Swift, at One Hartford Plaza, Hartford, CT, 06155-0001 and by serving a copy of the same on the Georgia Secretary of State pursuant to O.C.G.A. § 14-2-1510(b).

4.   Defendant HARTFORD FIRE INSURANCE COMPANY is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It

3

may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

5.     Defendant TWIN CITY FIRE INSURANCE COMPANY authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is an Indiana for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

6.     Defendant HARTFORD ACCIDENT AND INDEMNITY COMPANY is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

7.     Defendant HARTFORD CASUALTY INSURANCE COMPANY is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is an Indiana for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is

4

289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

8.     Defendant HARTFORD INSURANCE COMPANY OF THE SOUTHEAST is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

9.     Defendant HARTFORD UNDERWRITERS INSURANCE COMPANY is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

10.     Defendant HARTFORD INSURANCE COMPANY OF THE MIDWEST is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System,

whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

11.    Defendant HARTFORD INSURANCE COMPANY OF ILLINOIS is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia.  It is an Illinois for-profit insurance company with its principal place of business located at 4245 Meridian Parkway, Aurora, Illinois.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

12.    Defendant SENTINEL INSURANCE COMPANY, LTD, is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia. It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA 30046-4805, USA.

13.    Defendant    PROPERTY    AND    CASUALTY    INSURANCE COMPANY OF HARTFORD is authorized by the Office of Insurance and Safety Fire Commissioner to sell Property & Casualty in Georgia. It is a Connecticut for-profit insurance company with its principal place of business located at One Hartford Plaza, Hartford, Connecticut.  It may be served via its registered agent, C T Corporation System, whose address is 289 S. Culver Street, Lawrenceville, GA

30046-4805, USA.

14.     JOHN DOE CORPORATIONS 1–100 are as yet unidentified issuing companies, property and casualty insurance company subsidiaries or affiliates in The Hartford Insurance Group or within The Hartford Financial Services Group, Inc. who sold, issued or insured Business Owner policies that included Business Income, Civil Authority and/or Extra Expense coverages in all 50 States, the District of Columbia, and Puerto Rico. These JOHN DOE CORPORATIONS are typically organized under the laws of the state in which they conduct most or all of their business.  When these JOHN DOE CORPORATIONS become identified, they will be added through amendment and served as required by law.

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendants.

16.     This Court has personal jurisdiction over all Defendants because all Defendants are authorized to sell insurance in Georgia, regularly conduct business in Georgia, and have sufficient minimum contacts in Georgia.  Defendants intentionally availed themselves of this jurisdiction by marketing and selling

insurance products and services in Georgia, and by accepting and processing payments for those products and services within Georgia.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because a substantial part of the events, acts and omissions giving rise to Plaintiffs' claims occurred in this District.

## GENERAL ALLEGATIONS

18.     The Hartford sells a variety of insurance products, serving insurance needs for more than one million small businesses.  As of December 31, 2019, The Hartford claimed $20.7B in revenue from the sale of its insurance products.[1]

19.     As a part of insurance lines the Hartford offers, business insurance is marketed and sold to help "protect business owners from unexpected losses." Included within its standard business insurance line of products, The Hartford offers Business Income Insurance ("BII"), also known as business interruption coverage, which is marketed to small businesses in several industries.  BII is a product sold to businesses to "cover costs if a business is forced to move, close or rebuild in the event of a disaster" and is specifically touted to help cover "Taxes", "Payroll", "Utilities" "Lost Profits", "Advertising", "Mortgage/Rent" and "Relocation

---

[1] https://s0.hfdstatic.com/sites/the_hartford/files/facts-about-the-hartford.pdf, last accessed April 29, 2020.

Expenses".[2]

20.     Plaintiff Roy H. Johnson, DDS, is a dentist in Cobb County, Georgia, and has provided dental care to his patients for over 40 years.  His practice, Windy Hill Dentistry, LLC, employs three dentists and eleven full time staff to serve all patient populations, focusing on general and cosmetic dentistry.

21.     Understanding that certain events outside his control could lead to an interruption of business and lost revenue, Dr. Johnson and Windy Hill Dentistry, LLC, purchased a Spectrum® Business Owner's Policy from The Hartford ("Policy"), with a Policy Period from June 27, 2019 to June 27, 2020, which included "Business Income and Extra Expense Coverage", "Action of Civil Authority" and "Extended Business Income."  (See **Exhibit A**; Declarations, p. 4 attached hereto.)

22.     The Spectrum® Business Owner's Policy is a standard policy form issued by The Hartford in all 50 states, the District of Columbia, and Puerto Rico, and does not materially differ in coverage obligations.

---

[2]https://www.thehartford.com/business-insurance/strategy/risk-management-firms/business-interruption, last accessed April 29, 2020.

23.    Coverage under The Hartford's Policy includes a Special Property Coverages form, which sets forth the terms of coverage for Business Income and Extra Expense Coverage.

24.    The insuring provision of the Policy is designed to pay for "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations."  Further, as Covered Property includes loss of Business Income, the Additional Coverages provision of the policy specifically insures, among other losses, "the actual loss of Business Income you sustain due the necessary suspension of your 'operations' during the 'period of restoration.'"[3]

25.    The Policy also provides "Civil Authority" coverage, which is "extended to apply to the actual loss of Business Income sustained when access to [the] 'scheduled premises' is specifically prohibited by order of a civil authority...."[4]

26.    Additionally, the Policy also provides "Extra Expense" coverage, in which The Hartford promises to pay for expenses incurred to restore a business to normal services.

27.    Finally, the Policy affords "Extended Business Income" coverage which The Hartford's salesforce promotes to "help[] replace lost business income if,

---

[3] *See* Ex. A, Special Property Coverage Form, §A(5)(o), p. 10 of 25.
[4] Id., § q(1), p. 11 of 25.

after resuming operations following a loss, a business is unable to regain the income level that existed prior to the loss."[5]

28.     Unlike many commercial BII policies, the Special Property Coverages Form does not exclude loss caused by a virus or communicable disease.

## COVID-19 BECOMES A GLOBAL PANDEMIC

29.     In late 2019, a new and significant outbreak of a severe respiratory disease (COVID-19), caused by a novel coronavirus (SARS-Cov-2), emerged in Wuhan, China.[6]

30.     The respiratory disease caused by the novel coronavirus ("COVID-19") is an infectious virus that can rapidly spread from person-to-person and resulted in serious illness and death across the globe.

31.     On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.

32.     In efforts to curb the spread of the virus and in response to the rapidly spreading pandemic, federal, state and local governments implemented temporary travel restrictions and guidelines advising against essential travel.

---

[5]

https://thehartford.my.salesforce.com/sfc/p/#300000007NS7/a/a00000001dSF/.0oCZLcoBBB2L MMyW3OrmhQpwls9KtNdBlxeeZG2_zU (last visited May 5, 2020).
[6] For simplicity, this Complaint refers to both as "COVID-19".

33.     The Centers for Disease Control and Prevention ("CDC") identified the potential public health threat posed by COVID-19 in the United States, and advised that the person-to-person spread of COVID-19 will continue to occur.

34.     The CDC noted that COVID-19 was proliferating via "community spread," meaning people were contracting the virus as a result of direct or indirect contact with infected persons in the communities where they lived and worked, including some who are not sure how or where they became infected.

35.     On March 13, 2020, President Donald Trump declared the outbreak of COVID-19 a national emergency beginning March 1, 2020.

36.     In response to the COVID-19 pandemic, many state and local governments throughout the United States enacted measures to combat the ever-growing spread of the pandemic, including declarations of public health emergencies and stay at home orders.

37.     On March 19, 2020, California became the first state to issue a shelter in place order and many others soon followed.  By April 20, 2020, at least 42 states along with a number of number of cities and counties and U.S. territories, urged their citizens to stay in their homes as much as possible, including in the following states/territories: Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Kansas,

Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia and Wisconsin.

38.   The *New York Times* has reported that at least 316 million Americans – about 95% of the country – were told to stay at home for several weeks, and likely longer.

39.   Globally, as of May 5, 2020, there have been at least 3,659,271 confirmed cases and 256,894 deaths.[7]  These numbers are growing each day.



_____

[7] https://coronavirus.jhu.edu/map.html (last visited May 5, 2020).

13

40.    The United States now leads the globe in the number of confirmed COVID-19 cases, with more than 1.2 million confirmed cases and nearly 72,000 deaths as a result.  COVID-19 is present in every state in the nation.

### GEORGIA IS AN EXEMPLARY STATE IMPACTED BY COVID-19

41.    In early March 2020, the Georgia Department of Public Health determined that COVID-19 "is spreading throughout communities" and laboratory testing confirmed more than sixty (60) cases of COVID-19 had surfaced in Georgia, requiring the implementation of certain restrictions to limit the spread.

42.    On March 14, 2020, Georgia Governor Brian Kemp declared a Public Health State of Emergency[8] and, April 2, 2020 issued an Executive Order, requiring "all residents and visitors of the State of Georgia are required to shelter in place within their homes or places of residence … taking every possible precaution to limit social interaction to prevent the spread or infection of COVID-19 to themselves or any other person…."[9]

43.    On March 18, 2020, the Centers for Medicare and Medicaid Services ("CMS") released recommendations on Adult Elective Surgeries and Non-Essential Medical, Surgical, and Dental Procedures During COVID-19 Response.   These

---

[8]  https://gov.georgia.gov/document/2020-executive-order/03142001/download
[9]  https://gov.georgia.gov/document/2020-executive-order/04022001/download

14

recommendations provided a framework for all medical providers, including dentists, to implement immediately and delay all elective surgeries, non-essential medical, surgical, and dental procures during the 2019 COVID-19 outbreak.

44.     Further mandates to cancel or postpone elective and routine medical procedures were issued by bodies and licensing boards governing dental practices, including the CMS, American Dental Association ("ADA"), the American Medical Association ("AMA").

45.     Again, on April 7, 2020, in to "limit exposure of patients and staff to the virus that causes COVID-19," CMS recommended the cancellation or postponement of all non-emergent, elective treatment, and preventive medical services for patients of all ages.[10]

46.     On April 8, 2020, the CDC issued further guidelines for dental practices related to elective and routine operations, recommending all dental facilities postpone elective procedures, surgeries, and non-urgent dental visits for the foreseeable future.[11] For other healthcare facilities, CDC guidelines call for the rescheduling of all non-urgent outpatient visits and elective surgeries.[12]

---

[10] https://www.cms.gov/files/document/cms-non-emergent-elective-medical-recommendations.pdf
[11] https://www.cdc.gov/oralhealth/infectioncontrol/statement-COVID.html
[12] https://www.cdc.gov/coronavirus/2019-ncov/hcp/guidance-hcf.html

47.    The shelter-in-place Orders, association bulletins, governmental guidelines and recommendations, and other health experts consistently and unfailingly mandated dental practices should cancel or postpone treatment of all non-emergent patients.  The goal of such measures was to prevent transmission of a known, dangerous virus deeply persistent in communities, cities, counties, and all states across the United States.

48.    According to the CDC, SARS-CoV-2 is known to remain live and viable for hours up to days on "surfaces made from a variety of chemicals," including surfaces commonly found in dentist and physician offices[13] and can be spread by asymptomatic members of the public.

49.    In Georgia, there have been 29,905 confirmed COVID-10 cases and 1,295 individuals perished from the first death reported on March 12, 2020 until May 5, 2020.[14]

---

[13] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html
[14] https://dph.georgia.gov/covid-19-daily-status-report, (last visited May 5, 2020.)

50.     In Cobb County, Georgia, where the Plaintiffs' "scheduled premises" is located, there have been at least 1,886 confirmed COVID-19 cases, 500 hospitalizations and 102 deaths.[15]  Indeed, Cobb County, Georgia is among the top 5 counties with the greatest number of confirmed COVID-19 cases in the state.[16]

51.     As a result of the proliferation and spread of COVID-19, and due to the resultant Declarations of Emergency, Executive Orders and local mandates requiring the public to exercise strict social distancing practices, non-emergent, routine, and elective medical procedures were halted at all dental and medical practices in the states.  Accordingly, Plaintiffs were forced to indefinitely suspend or reduce the dentistry practice at Windy Hill Dentistry for the foreseeable future.

52.     Upon information and belief, The Hartford has, on a wide-scale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, and Extra Expense coverages for losses suffered due to the spread of COVID-19. The Hartford has denied Plaintiffs' claim under their Hartford policy.

---

[15] Id.
[16] Id.

## The Policy

### *The Special Property Coverage Form At Issue*

53.     In return for the payment of a premium, The Hartford issued Policy No. 20 SBW AM7715 DV to Roy H. Johnson, DDS and Windy Hill Dentistry, LLC for a policy period beginning of June 26, 2019 to June 26, 2020, including a Business Liability Coverage Form and a Special Property Coverage Form.  *See* Policy No. 20SBWAM7715DV, attached hereto as **Exhibit A**.

54.     Dr. Johnson and Windy Hill Dentistry have performed all of their obligations under The Hartford policy, including payment of all premiums and submission of a claim.

55.     Among other coverages, the Plaintiffs' Special Property Coverage Form, includes loss of Business Income, Civil Authority, Extra Expense due to the shutdown caused by COVID-19.

56.     The Policy is an all-risk policy.  This type of policy covers all risks of loss except for those expressly and specifically excluded.  Here, The Hartford's Special Property Coverage Form provides The Hartford will "pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss."

18

57.     A "Covered Cause of Loss" is defined in the insurance contract as a "RISK OF DIRECT PHYSICAL LOSS" subject to various exclusions and limitations.

58.     The Hartford did not exclude or limit coverage for losses from viruses for communicable diseases.

59.     Losses due to COVID-19 are a Covered Cause of Loss under The Hartford policies.

60.     Section A (**Coverage**), 2 (**Coverage Extensions**), 5 (**Additional Coverages**) o. (**Business Income**) of the Policy provides The Hartford contractually agreed to:

> pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

61.     Business Income under the policy is defined as the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll."

62.     Relative to the physical loss or physical damage requirement under the Special Property Coverage form of the Policy, the presence of a dangerous virus or disease is known to be a physical loss or physical damage, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, Insurance Services Office, Inc. ("ISO"), circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. ***Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.*** An allegation of property damage may be a point of disagreement in a particular case. [17]

63.     Contrary to the denial made in this case, the insurance industry has recognized broad pollution or contamination exclusions do not limit or exclude

---

[17]*See* ISO Circular LI-CF_2006-175, July 6, 2006, available at https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf (emphasis added).

coverage related to viruses or bacteria, thus creating the need for specific endorsements necessary to exclude loss due to virus or bacteria.

64.    The Hartford also agreed to pay necessary "Extra Expense" incurred by its insureds during the period of time the business would not have incurred "if there had been no direct physical loss or physical damage to property."

65.    "Extra Expense" includes, among other items, expense incurred "to minimize the suspension of business if you cannot continue 'operations.'" Suspension of business is defined as "(a) the partial slowdown or complete cessation of your business activities; or (b) That part or all of the "scheduled premises" is rendered untenable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy."

66.    The Hartford further agreed to pay the "actual loss of Business Income" sustained "when access to [the] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [the] 'scheduled premises.'"

67.    Losses caused by COVID-19 and related orders issued by local, state, and federal authorities, triggered the Business Income, Extra Expense, and Civil Authority provisions of The Hartford's Special Property Coverage Form.

### *COVID-19 Is A Covered Cause of Loss Under Standard and Uniform Policy Language*

68.   The spread of COVID-19, and the corresponding orders and mandates from civil authorities throughout the country requiring the suspension of businesses like Plaintiffs' and the putative class members, constitutes physical damage to the premises and a loss that is covered under The Hartford's Special Property Coverages Form.

69.   The presence of COVID-19 is the cause of "direct physical loss" and "physical damage" to those premises covered under Plaintiffs' policy, and the policies of other Class members, by denying use of and damage to the "covered premises" and by the involuntary suspension of all non-emergent business operations.

70.   In response to COVID-19, the federal government, the WHO, the CDC, State governing authorities, the AMA, and the ADA all decided to prohibit access to Plaintiffs' and other class members' premises, thus suspending their normal business activities.

71.   As a result of the presence of COVID-19 and the orders of civilian authorities, Plaintiffs and the  other Class members lost Business Income and incurred Extra Expense.  Indeed, the Georgia Dental Association reports that an ADA

survey of dentists shows the typical dental office is seeing less than 5% of its normal patient volume.[18]

72.    On April 29, 2020, Plaintiffs submitted a proof of loss under the Special Property Coverage Form, claiming loss of Business Income for closures due to COVID-19 and corresponding shelter-in-place orders put in place by order of civil authorities.   The same day, The Hartford denied their claim.   (*See* **Exhibit B**, attached hereto.)   As a basis for denying coverage under the policy, The Hartford maintained "since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered."

73.    Indeed, The Hartford has, on a wide-scale basis with many if not all of its insureds, refused to provide coverage under the Policy for losses due to COVID-19.

74.    The Hartford has dedicated a page on its website to the impacts of COVID-19 on business operations, asserting coverage "is not designed to apply in the case of a virus."[19]   Therefore, The Hartford is effectively denying all claims for business interruption coverage related to COVID-19.

---

[18]

https://www.ada.org/~/media/ADA/Science%20and%20Research/HPI/Files/HPIbrief_0420_1.pdf?la=en

[19] https://www.thehartford.com/coronavirus/businesses

75.     Given the rapid denial of such claims, The Hartford has failed to adequately investigate the factual occurrence of the Plaintiffs' and other Class members' claims, instead issuing an automated blanket denial of all claims.

76.     If left unchecked, The Hartford will continue to deny coverage under the Special Property Coverage Form, even as governing State and Federal authorities recognize the impropriety of such denials.[20]

77.     The Hartford's basis for denial – that COVID-19 "did not cause property damage at your place of business or in the immediate area" and thus is not covered under the policy – is in direct contravention of the vast majority of cases in the United States and insurance industry standards, where it is commonly accepted that "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces." *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 708 (E.D.Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013). Moreover, the insurance industry commonly recognizes imminent threat of release of a dangerous substance, thus rendering a premises useless, constitutes physical damage. *Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.*,

---

[20] CNBC, "Insurers are Denying Coronavirus Claims.  Restaurants are Fighting back," (last visited May 5, 2020),  https://www.cnbc.com/2020/04/20/insurers-are-denying-coronavirus-claims-restaurants-are-fighting-back.html ("'I would like to see the insurance companies pay if they need to pay, if it's fair.  And they know what's fair.  And I know what's fair,' Trump told reporters on Tuesday during his daily coronavirus task force briefing.").

311 F.3d 226, 236 (3d Cir.2002); *Motorists Mut. Ins. Co. v. Hardinger,* 131 F. App'x 823 (3d Cir. 2005) (well contaminated by e-coli rendered property useless or uninhabitable, thus constituting physical loss or damage); *Sentinel Mgmt Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn. 1997); *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo.1968) (gas fumes constituted a physical loss); *Farmers Ins. Co. v. Trutanich*, 123 Or. App. 6, 858 P.2d 1332 (1993) (infiltration of premises by methamphetamine fumes constituted a physical loss); *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, 2016 WL 3267247, at *9 (D. Ore. June 7, 2016) (air quality due to wildfires rendered property uninhabitable and unusable for its intended purpose").

78.    In issuing blanketed denials resulting from the spread of COVID-19, The Hartford is breaching its contractual obligation with its insureds, who are entitled to the coverages afforded by the uniform language of the Business Owners Policies they have.

79.    Dentists and physicians, called upon as a first-line defense against the COVID-19 outbreak to keep the public safe and protected, could not perform non-essential elective medical procedures or see their patients on a regularly scheduled basis, which is the lifeblood for any dental or medical practice.

80.     As a result of government mandated restrictions, many dental and medical practices have been forced to shut down and lay off staff.  Now more than ever, insured practices who have paid insurance premiums for specifically designed policies to cover interruptions are entitled to the coverage for which they paid.

## CLASS ACTION ALLEGATIONS

81.     The Class Member policies at issue in this case were issued as uniform, standard policies containing the same or substantially similar language which provides an all risk policy of insurance against the losses alleged in this case.

82.     The Class Member policies at issue in this case do not vary substantially from policy holder to policy holder.

83.     The Class Member policies at issue in this case do not exclude viruses or communicable diseases.

84.     Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek class certification of the following nationwide class (the "Nationwide Class" or the "Class"):

## NATIONWIDE CLASS

**All natural persons and/or dental practice groups in the United States who purchased from Defendants a Business Owner policy of insurance, with Business Income, Civil Authority and/or Extra Expense coverage, who were subject to federal recommended guidelines or state directives to limit, suspend or cancel non-emergent and elective procedures during the COVID-19 pandemic.**

26

The Nationwide Class asserts claims against The Hartford for Breach of Contract for Business Income coverage (Count I), Breach of contract for Civil Authority Coverage (Count II), Breach of Extra Expense Coverage (Count III) and Declaratory Relief (Count IV).

85.     Pursuant to Fed. R. Civ. P. 23 (b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek certification of state-by-state claims in the alternative to the nationwide claims breach of contract claims brought under Georgia common law (the "Statewide Subclasses"), defined as follows:

**STATEWIDE [NAME OF STATE OR TERRITORY] SUBCLASS**

**All natural persons and/or dental practice groups residing in [same of state or territory] who purchased from Defendants a Business Owner policy of insurance, with Business Income, Civil Authority and/or Extra Expense coverage, who were subject to federal recommended guidelines or state directives to limit, suspend or cancel non-emergent and elective procedures during the COVID-19 pandemic.**

The Alternative Subclasses assert claims against The Hartford for Breach of Contract for Business Income coverage (Count 1), Breach of contract for Civil Authority Coverage (Count II), Breach of Extra Expense Coverage (Count III) and Declaratory Relief (Count IV).

86.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

87.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

88.     The Class meet the criteria for certification under Rule 23(a), 23(b)(2), 23(b)(3) and 23(c)(4).

89.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  The members of each Class and Subclass are so numerous and geographically dispersed that the joinder of all members is impractical. The exact number of class members is unknown to Plaintiffs at this time but may be ascertained through Defendants' records. Based on the large number of Business Owner policies issued by Defendants, and the blanket denials of all claims related to business loss occasioned by COVID-19, the Class likely comprises tens of thousands of members geographically dispersed throughout the United States. Affected entities' and individual insured's names and addresses are available from Defendants' records, and class members may be notified of the

pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

90.   **Commonality and Predominance:  Fed. R. Civ. P. 23(a)(2) and (b)(3).** As to each Class and Subclass, this action involves common questions of law and fact which predominate over any questions affecting individual class members. The terms of The Hartford's coverage, exclusions and limitations related to Special Property Coverages are uniform for those contained within the proposed class, and The Hartford breached the terms of those contracts pursuant to a uniform policy of denying all loss of business income claims related to COVID-19. Common questions of law and fact include, but are not limited to:

a.    Whether Defendants' conduct breaches its Contract of Insurance;

b.    Whether the spread of COVID-19 constitutes physical loss or damage to covered premises so as to trigger coverage for loss of Business Income under Special Property Coverages of Defendants' Business Owner's insurance policy;

c.    Whether the "Pollutants and Contaminants" Property Definitions section of the Policy applies to COVID-19;

d.      Whether Plaintiffs and members of the Class are entitled to damages, costs, or attorneys' fees from Defendants; and

e.      Whether Plaintiffs and members of the Class are entitled to compensatory damages.

91.     **Typicality. Fed. R. Civ. P. 23(a)(3).** As to each Class and Subclass, Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and members of the Class were subjected to the same unlawful conduct and damaged in the same way. Defendants' conduct that gave rise to the claims of Plaintiffs and other Class members (*i.e.*, denying coverage for a covered loss) is the same for all members of the Class.

92.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** As to each Class and Subclass, Plaintiffs are adequate representatives of the Class because Plaintiffs are a member of the Class and are committed to pursuing this matter against Defendants to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

93.     **Declaratory and Injunctive Relief:  Fed. R. Civ. P. 23(b)(2).** As to each Class and Subclass, the prosecution by separate actions by individual Class

members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for The Hartford.  Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Equifax has acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.  Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendants continue to deny claims for covered losses for loss of Business Income resulting from continuing interruptions to their insured's businesses, thus making declaratory relief a live issue and appropriate to the Class as a whole.

94.     **Superiority:  Fed. R. Civ. P. 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs

and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

95.    Plaintiffs allege that, based on Defendants' denial of thousands of claims for loss of Business Income, Civil Authority and Extra Expense coverage due to the spread of COVID-19 and corresponding shelter-in-place orders, the total claims of individual Class Members in this action exceed $5,000,000.00 in the aggregate, exclusive of interest and costs.

## COUNT I

## BREACH OF CONTRACT – BUSINESS INCOME COVERAGE

96.    Plaintiffs reallege and incorporate Paragraphs 1 - 95, as if fully set forth herein.

32

97.   Plaintiffs bring this Count individually and on behalf of the other members of the proposed Class and Alternative Subclasses.

98.   Plaintiffs' insurance policy, as well as those of the other Business Income Class members, are contracts under which The Hartford was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Class members' losses for claims covered by the policy, which does not expressly exclude virus' and/or communicable diseases from coverage.

99.   The Hartford agreed to pay for insureds' actual loss of Business Income sustained due to the necessary suspension of practice caused by direct physical loss of or physical damage to property at the scheduled premises.

100.   The Hartford agreed to "pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage."

101.   "Business Income" means "[n]et Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll."

102.   COVID-19 caused direct physical loss and damage to Plaintiffs' and the other Business Income Class members' Scheduled Premises, requiring

suspension of practice at their Scheduled Premises. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiffs' and the other Business Income Class members' insurance policies with The Hartford.

103.    Plaintiffs and the other Business Income Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by The Hartford or The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

104.    By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Class members in connection with the COVID-19 pandemic, The Hartford has breached its coverage obligations under the Policies.

105.    As a result of The Hartford's breaches of the Policies, Plaintiffs and the other Business Income Class members have sustained substantial damages for which The Hartford is liable, in an amount to be established at trial.

## COUNT II

## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE

106.    Plaintiffs reallege and incorporate Paragraphs 1 – 95, as if fully set forth herein.

107.    Plaintiffs bring this Count individually and on behalf of the Class or Alternative Subclasses.

108.    Plaintiffs' insurance policy, as well as those of the other Civil Authority Class members, are contracts under which The Hartford was paid premiums in exchange for its  promise to pay Plaintiffs' and the other Civil Authority Class members' losses for claims  covered by the policy, which does not expressly exclude virus and/or communicable diseases from coverage.

109.    The Hartford promised to pay "the actual loss of Business Income" that a policyholder  sustains "when access to [the] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [the] 'scheduled premises'.

110.    The shelter-in-place orders and mandates by relevant civil authorities triggered the Civil Authority provision under Plaintiffs' and  the other members of the Civil Authority Class's insurance policies with The Hartford.

111.    Plaintiffs and the other members of the Civil Authority Class have complied with all applicable provisions of the Policies and/or those provisions have been waived  by The Hartford and The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance  coverage obligations pursuant to the Policies' clear and unambiguous terms.

112.     By denying coverage for any practice losses incurred by Plaintiffs and other members of the Civil Authority Class in connection with the COVID-19 pandemic, The Hartford has breached its coverage obligations under the Policies.

113.     As a result of The Hartford's breaches of the Policies, Plaintiffs and the other members of the Civil Authority Class have sustained substantial damages for which The Hartford is liable, in an amount to be established at trial.

## COUNT III

## BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE

114.     Plaintiffs reallege and incorporate Paragraphs 1 – 95, as if fully set forth herein.

115.     Plaintiffs bring this Count individually and on behalf of the other Class or Alternative Subclasses.

116.   Plaintiffs' insurance policy, as well as those of the other Extra Expense Class members, are contracts under which The Hartford was paid premiums in exchange for its promise to pay Plaintiffs' and the other Extra Expense Class members' losses for claims covered by the policy, which does not expressly exclude virus and/or communicable diseases from coverage.

117.   The Hartford also agreed to pay necessary Extra Expense  that its insureds incur during the "period of restoration" "resulting from a Covered Cause of Loss" to the scheduled premises.

118.   "Extra Expense" means expenses necessarily incurred by a policyholder "to avoid or minimize the suspension of business and to continue 'operations'; (b) To minimize the suspension of business if you cannot continue 'operations'; and (c) To repair or replace any property; or during  the period of restoration to continue normal services and operations."

119.   Due to COVID-19, Plaintiffs and the other members of the  Extra Expense Class incurred Extra Expense at scheduled premises.

120.   Plaintiffs and the other members of the Extra Expense Class have complied  with all applicable provisions of the Policies and/or those provisions have been waived by The Hartford  or The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance coverage  obligations pursuant to the Policies' clear and unambiguous terms.

121.   By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Class in connection with the COVID-19 pandemic, The Hartford has breached its coverage obligations under the Policies.

122.    As a result of The Hartford's breaches of the Policies, Plaintiffs and the other members of  the Extra Expense Class have sustained substantial damages for which The Hartford is liable, in  an amount to be established at trial.

## COUNT IV

## DECLARATORY JUDGMENT

### (BUSINESS INCOME, CIVIL AUTHORITY AND/OR EXTRA EXPENSE COVERAGE)

123.    Plaintiffs reallege and incorporate Paragraphs 1 – 95, as if fully set forth herein.

124.    Plaintiffs bring this Count individually and on behalf of the other members who purchased Business Income, Civil Authority and/or Extra Expenses Coverage.

125.    Plaintiffs' insurance policy, as well as those of the Class members, are contracts under which The Hartford was paid premiums in  exchange for its promise to pay Plaintiffs' and the other Class members' losses for claims covered by the Policy.

126.    Plaintiffs and the Class members have complied with all applicable provisions of the Policies and/or those provisions have been  waived by The Hartford or The Hartford is estopped from asserting them, and yet The Hartford

has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the Business Income Class are entitled.

127.    The Hartford has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

128.    An actual case or controversy exists regarding Plaintiffs' and the other Class members' rights and The Hartford's obligations under the Policies to reimburse them for the full amount of Business Income losses, Civil Authority and/or Extra Expense losses in connection with suspension of their practices stemming from the COVID-19 pandemic.

129.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Class members seek a declaratory judgment from this Court declaring the following:

> i.    Business Income losses incurred in connection with the necessary interruption of their practices stemming from the COVID-19 pandemic, are insured losses under their Policies;
>
> ii.   Civil Authority losses incurred in connection with the necessary interruption of their practices stemming from the COVID-19 pandemic, are insured losses under their Policies;

    iii.    Extra Expense losses incurred in connection with the necessary interruption of their practices stemming from the COVID-19 pandemic, are insured losses under their Policies; and

    iv.    The Hartford is obligated to pay Plaintiffs and the other Class members for the full amount of the Business Income, Civil Authority and Extra Expense losses incurred and to be incurred in connection with the period of restoration and the necessary interruption of their practices stemming from the COVID-19 pandemic.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

a.    Entering an order certifying the proposed Nationwide Class, or as Alternative Subclasses as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

b.    Entering judgment on Counts I-III in favor of Plaintiff and the members of the Business Income Class, the Civil Authority Class, and the Extra Expense Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.      Entering declaratory judgments on Count IV in favor of Plaintiffs and the members of the Business Income Class, the Civil Authority Class, and the Extra Expense Class as requested;

d.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Defendant to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 8, 2020            Respectfully submitted,

 */s/Roy E. Barnes*          
Roy E. Barnes
Ga. Bar. No. 039000
John R. Bevis
Ga. Bar No. 056110
Mark D. Meliski
Ga. Bar No. 501198

**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, Georgia 30060
Telephone: (770) 227-6375
Facsimile: (770) 227-6373

roy@barneslawgroup.com
bevis@barneslawgroup.com
meliski@barneslawgroup.com

*Counsel for Plaintiffs and the Proposed Class*